IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JARRET MONTEZ WILSON,                                                    PLAINTIFF

V.                                                      CIVIL ACTION NO. 3:20-CV-610-RPM

JILL D. MASSEY, ET AL.,                                                  DEFENDANTS

## MEMORANDUM OPINION AND ORDER

### I.        Introduction

On September 17, 2020, plaintiff Jarret Montez Wilson ("Wilson"), proceeding *pro se* and *in forma pauperis*, filed a 42 U.S.C. § 1983 ("Section 1983") civil rights complaint against defendants Jill D. Massey ("Massey") and Police Officer Bobbi Thomasson ("Thomasson") (collectively, "defendants") alleging violations of his constitutional rights. Doc. [1]. Liberally construing his supplemented Complaint, *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991), Wilson asserts claims arising under the Fourth, Eighth, and Fourteenth Amendments of the U.S. Constitution. Doc. [1], at 3. Before the Court are summary judgment motions filed by the defendants. Doc. [20, 24].[1]

### II.       Facts

On September 14, 2017, Thomasson arrived at the scene of a collision between a Honda and Mustang on Highway 18 in Rankin County. Doc. [20], Ex. 3, at 3; [41], Ex. 2, (T. 84). She discovered the Honda driver incapacitated in his vehicle and suffering from significant injuries; he was immediately transported to the hospital. Doc. [20], Ex. 3–4. The Mustang, however, was unoccupied; after "running" the license plate number, Thomasson determined that Wilson was the

---

[1] Since Massey's motion includes exhibits outside the pleadings, it is best characterized as a summary judgment motion. *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 357 n.4, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959).

registered owner. *Id.*, Ex. 3, at 3. Two eyewitnesses, speaking to Thomasson, described seeing a "light-skinned black" man wearing a "black tank-top" flee from the Mustang. *Ibid.* Shortly after she reported the eyewitness description to dispatch, non-party Sergeant Elwell ("Elwell") encountered Wilson, who was injured, roughly a quarter mile from the accident and arrested him for his flight therefrom. *Ibid.* Elwell informed Thomasson that Wilson was acting "belligerent and intoxicated," Doc. [41], Ex. 2 (T. 42), and smelled like "intoxicating beverages," Doc. [20], Ex. 3, at 3. Wilson was transported to Rankin County jail, booked, and released of his own recognizance to receive medical treatment; upon his release, Wilson immediately went to a Hinds County hospital. Around this time, Justice Court Judge Whitney M. Adams ("Judge Adams") issued a search warrant authorizing Thomasson to obtain "samples" from Wilson. Doc. [20], Ex. 3, at 1.

Officer Thomasson and Nurse Massey presented the warrant to Wilson. *See, e.g.*, Doc. [41], Ex. 2, (T. 24–28). However, Wilson was belligerent and hurled vulgarities. Doc. [29], Ex. 2; [41], Ex. 2, (T. 25). Despite being presented with the warrant, Wilson only agreed to submit to a blood test for "hospital purposes;" he emphasized that he was not consenting to an investigative blood test. Doc. [1], at 6; [41], Ex. 2, (T. 26, 49). Pursuant to the warrant, Nurse Massey then drew his blood. Doc. [29], at 2; [41], Ex. 2, (T. 18, 24–28, 38). Wilson's blood-alcohol content ("BAC") was 0.138. Doc. [20], Ex. 5. Days later, Judge Adams issued a warrant for his arrest. Doc. [32], at 20. On November 8, 2017, U.S. Marshals arrested Wilson in connection with three misdemeanor charges and an aggravated DUI charge. *See*, *e.g.*, *id.*, at 26. Later, Judge Adams issued a mittimus setting Wilson's bail at $50,000 in connection with the misdemeanor charges. Doc. [20], Ex. 6. Seven days later, Judge Adams issued a second mittimus setting Wilson's bail at $20,000 in connection with a new felony DUI charge. *Ibid.* According to Wilson, his bail was later lowered and he posted bail.

Wilson subsequently moved to suppress his blood test results on various grounds, including consent by trickery and a defective warrant affidavit. Doc. [41], Ex. 1, (T. 16–22). While Circuit Court Judge John H. Emfinger ("Judge Emfinger") concluded that the warrant itself was valid, he later determined that it was not properly executed in Hinds County. *Id.,* Ex. 2 (T. 52, 77–78). Finding that Thomasson exceeded her state law-defined jurisdiction, Judge Emfinger suppressed the blood test results obtained pursuant to the warrant. *Id.*, Ex. 2 (T. 84–87). Ultimately, Wilson pleaded guilty to (i) felonious flight from the scene of an accident, and (ii) assault on a law enforcement officer. Doc. [20], Ex. 7. In exchange, the State dismissed the other pending charges without prejudice. Doc. [41], Ex. 3. This action followed.

### III.    Standard of Review

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). "All facts and inferences must be viewed in the light most favorable to the non-movant." *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 227 (5th Cir. 2018) (citation omitted). "'When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quotation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## IV.    Qualified Immunity

In a Section 1983 case, a government official acting in his individual capacity can raise qualified immunity as an affirmative defense. *Saucier v. Katz*, 533 U.S. 194, 203, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Under the first prong, the Court asks: "do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201, 121 S.Ct. 2151. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Ibid.* Under the second prong, the Court considers whether the government official's conduct violated "clearly established" law. *Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019). Under this prong, "[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151. The "clearly established" rule relied on must be "'settled law,' . . . which means it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority[.]'" *District of Columbia v. Wesby*, ⸺ U.S. ⸺, 138 S.Ct. 577, 589–90, 199 L.Ed.2d 453 (2018) (citations omitted).

## V.    Analysis

### A.  Constitutional Right to Privacy

Under the Fourteenth Amendment, individuals have a constitutional right to privacy. *Whalen v. Roe*, 429 U.S. 589, 598–600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). The constitutional right to privacy includes "the right to be free from the government disclosing private facts about its citizens." *Ramie v. City of Hedwig Vill., Tex.*, 765 F.2d 490, 492 (5th Cir. 1985). By its terms, however, a disclosure privacy claim can only be asserted against "willful participants" in the disclosure, *Fadjo v. Coon*, 633 F.2d 1172, 1175 (5th Cir. 1981), and only protects against disclosure of "private facts" about the "most intimate aspects of human affairs," *Ramie*, 765 F.2d

4

at 492 (citation omitted). Ultimately, in evaluating a disclosure privacy claim, the Court considers

whether "(1) the person had a legitimate expectation of privacy; and (2) that privacy interest

outweighs the public need for disclosure." *Cantu v. Rocha*, 77 F.3d 795, 806 (5th Cir. 1996)

(citation omitted).

Here, Wilson first argues that Massey violated his rights by disclosing his blood, and by extent

his blood test results, to Thomasson. Doc. [31], at 7.[2] Nevertheless, the subject blood was only

tested, in relevant part, for alcohol so his claim is necessarily limited in scope to disclosure of that

information. Doc. [20], Ex. 5. Under the first analytical prong, Wilson has a well-established

privacy interest in his medical records–and blood test results plainly fall under that umbrella.

*United States v. Burzynski Cancer Rsch. Inst.*, 819 F.2d 1301, 1309 (5th Cir. 1987). Nevertheless,

the presence of alcohol in Wilson's bloodstream is not particularly embarrassing or intimate.

Under these facts, Wilson's privacy interest in his blood test results is not particularly significant.

*Cantu*, 77 F.3d at 806. By contrast, the State has a strong interest in ensuring that motorists do not

drive under the influence of alcohol; prohibiting such conduct helps keep the public safe. The State

also has a strong interest in pursuing criminal proceedings. *Ramie*, 765 F.2d at 492–93. Indeed,

HIPAA regulations specifically carve out a disclosure exception for criminal proceedings. 45

C.F.R. § 164.512(d)(2). On balance, the State's interest in disclosure outweighs Wilson's privacy

interest. Therefore, Massey's warrant-induced disclosure of Wilson's blood test results did not

violate his privacy rights; she is entitled to qualified immunity. *Saucier*, 533 U.S. at 201, 121 S.Ct.

2151.

---

[2] Here, Massey acted pursuant to a search warrant and, therefore, "was participating in joint activity with state actors." *Moody v. Farrell*, 868 F.3d 348, 352 (5th Cir. 2017). For this reason, she acted under the color of state law and may raise qualified immunity. *Bustillos v. El Paso Cty. Hosp. Dist.*, 891 F.3d 214, 220–21 (5th Cir. 2018).

Wilson also alleges that Massey violated his disclosure privacy rights because the media reported that he was "a drunk." However, Wilson's Complaint is devoid of allegations that Massey played a willful role in disclosure of his blood test results *to the media*. He merely alleges that Massey's disclosure to Thomasson makes her liable for an unspecified future disclosure by unspecified individuals to unspecified media entities for unspecified reasons. Cf. *Fadjo*, 633 F.2d at 1175. As a result, this claim must fail.

## B.  Fourth Amendment

### i.        Search Warrant Claim

Turning to the Fourth Amendment, the Court first addresses Wilson's search warrant claim. In support of that claim, Wilson first argues that Thomasson's warrant affidavit included information outside of her personal knowledge. However, it is well-established that "[a] magistrate . . . may determine probable cause from evidence inadmissible at trial to determine guilt[,]" *Bennett v. City of Grand Prairie, Tex.*, 883 F.2d 400, 405 (5th Cir. 1989) (citation omitted), and a warrant affidavit "may rely on hearsay—information not within the personal knowledge of the affiant . . . as long as the affidavit presents a 'substantial basis for crediting the hearsay[,]'" *United States v. Laury*, 985 F.2d 1293, 1312 (5th Cir. 1993) (quotation omitted). *See also Kohler v. Englade*, 470 F.3d 1104, 1110 (5th Cir. 2006) (applying proposition in Section 1983 context). When analyzing such hearsay, the Court evaluates its overall reliability under the totality of the circumstances. *United States v. Jackson*, 818 F.2d 345, 348 (5th Cir. 1987).

Here, Thomasson's warrant affidavit included hearsay statements by Elwell, a fellow police officer, and two unnamed eyewitnesses. Doc. [20], Ex. 3, at 3. Since Wilson does not challenge the reliability of Elwell's statements, the Court presumes that those hearsay statements were reliable. *United States v. Hayles*, 471 F.2d 788, 793 (5th Cir. 1973); *Velardi v. Walsh*, 40 F.3d 569,

574 (2d Cir. 1994). Turning to the eyewitness statements, their statements were corroborated by: their similar descriptions of the suspect; their approximate description of Wilson; Wilson's identity as the Mustang's registered owner; Wilson's injuries; the location of his arrest; and the lack of incentive to lie. Doc. [20], Ex. 3, at 3. In turn, Thomasson's reliance on these hearsay statements was proper. *Laury*, 985 F.2d at 1312.

Wilson also argues that Judge Adams did not identify him in a search warrant. Doc. [31], at 4. This argument is meritless. For one, Judge Adams plainly named Wilson in the relevant search warrant. Doc. [20], Ex. 3. In fact, Judge Adams used Wilson's full name on four occasions in the half-page search warrant, which did not name anyone else. *Ibid.* Furthermore, the warrant affidavit unambiguously identified Wilson and specified facts supporting a finding of probable cause for a blood test. *Ibid.* Finally, while the warrant affidavit—utilized for both drivers—technically only stated that Thomasson sought "human blood samples" from the Honda driver, Doc. [41], Ex. 2, (T. 42–44), this isolated mistake was, in context, a mere clerical error lacking constitutional significance, *United States v. Waker*, 463 F. Supp. 2d 348, 353 (W.D.N.Y. 2006). This argument fails.

Even if the entire affidavit was considered, Wilson continues, it was still insufficient to establish probable cause. Doc. [31], at 2. When a purported Fourth Amendment violation arises from a search pursuant to a warrant, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officer[] acted in an objectively reasonable manner[.]"*Messerschmidt v. Millender*, 565 U.S. 535, 546, 132 S.Ct. 1235, 182 L.Ed.2d 47 (2012) (quotation omitted). Nevertheless, the shield of the independent intermediary doctrine is "not absolute" and subject to certain exceptions. *Mayfield v. Currie*, 976 F.3d 482, 487 (5th Cir. 2020). Under the exception relevant here, the Court asks whether the warrant affidavit presented to the magistrate was "so

lacking in *indicia* of probable cause as to render official belief in its existence unreasonable." *Malley v. Briggs*, 475 U.S. 335, 344–45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). When determining whether probable cause exists, the Court must "look to the 'totality of the circumstances' and decide 'whether the[] historical facts, viewed from the standpoint of an objectively reasonable police officer' demonstrate 'a probability or substantial chance of criminal activity.'" *Terwilliger v. Reyna*, 4 F.4th 270, 282 (5th Cir. 2021) (quoting *Wesby*, 138 S.Ct. at 586, 588).

In this case, Thomasson observed an abandoned Mustang at the scene of a collision; two eyewitnesses observed someone, similar in appearance to Wilson, fleeing from the Mustang; Wilson was identified as the Mustang's registered owner; Wilson was discovered, injured, roughly a quarter mile from the accident; and he smelled like "intoxicating beverages." Doc. [20], Ex. 3, at 3.  For these reasons, probable cause supported issuance of the search warrant. *Terwilliger*, 4 F.4th at 282.[3]

Wilson also argues that the search warrant did not authorize Thomasson to take a blood sample. An officer "who executes a search warrant in a reasonable, good-faith manner is not liable under [Section] 1983 for execution of the warrant." *Roderick v. City of Gulfport, Miss.*, 144 F. Supp. 2d 622, 628 (S.D. Miss. 2000) (citation omitted). By the same token, an officer may still be held liable if the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Messerschmidt*, 565 U.S. at 546, 132 S.Ct. 1235 (quotation omitted). The Court may also consider a warrant affidavit incorporated by reference into the warrant. *Schanzle v. Haberman*, 831 F. App'x 103, 106 (5th Cir. 2020).

---

[3] Wilson claims that he drank liquor provided by nonparty Thomas McGhee at the hospital. Doc. [29], at 1; [32], at 18. Assuming *arguendo* that Wilson stated as much to Thomasson, this single statement did not defeat probable cause to pursue the warrant. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272 (5th Cir. 1992).

Here, Thomasson's affidavit identified Elwell's observation that Wilson smelled like "intoxicating beverages" and his arrest of Wilson close to the accident. Doc. [20], Ex. 3. Incorporating the affidavit by reference, the warrant cited the DUI statute, specified that Wilson was suspected of committing that offense, and required the executing officer to take Wilson "to a place" where a "person qualified" could "take samples from" him and "conduct such examination as is medically necessary." *Ibid.* As such, it would be reasonable for an officer acting in good faith to conclude that the search warrant authorized a blood sample. *Messerschmidt*, 565 U.S. at 547–48, 132 S.Ct. 1235.

Wilson further argues that Thomasson violated his Fourth Amendment rights by executing the search warrant outside of her state law-defined jurisdiction. However, so long as a search warrant is "grounded in probable cause[,]" "phrased with sufficient particularity[,]" and "from a magistrate of the relevant jurisdiction," the Fourth Amendment is satisfied "even if those officers are acting outside their jurisdiction as defined by state law." *United States v. Green*, 178 F.3d 1099, 1106 (10th Cir. 1999). *See also Walker v. City of Wilmington*, 360 F. App'x 305, 313 (3d Cir. 2010). Here, probable cause supported the search warrant for the reasons already discussed. Furthermore, the search warrant was phrased with sufficient particularity because it identified: the individual to be tested; the relevant criminal statute; the length of detainment; the testing location; and the scope of testing. *United States v. Triplett*, 684 F.3d 500, 504 (5th Cir. 2012). Finally, Judge Adams is "a magistrate of the relevant jurisdiction[,]" *Green*, 178 F.3d at 1106, because, under Mississippi law, her search warrant could be executed in any county in Mississippi, including Hinds County. Miss. Code Ann. § 99–3–21. For these reasons, Thomasson's technical state law violation lacks constitutional significance. *Green*, 178 F.3d at 1106.

9

Finally, Wilson argues that Thomasson used "trickery" to obtain a blood sample and, therefore, violated his Fourth Amendment rights. However, when an officer obtains a valid search warrant, it authorizes him to *compel* the named individual to submit to a blood test, *Birchfield v. North Dakota*, 579 U.S. 438, 136 S.Ct. 2160, 2172, 195 L.Ed.2d 560 (2016), and a law enforcement official can obtain a suspect's blood without his consent, *Simmons v. Mason*, No. 17–CV–8886 (KMK), 2019 WL 4525613, at *5 (S.D.N.Y. Sept. 18, 2019). Here, Thomasson possessed a constitutionally valid search warrant. Doc. [20], Ex. 3.[4] A reasonable officer in Thomasson's position could conclude that a blood test fell within the scope of the warrant. *Messerschmidt*, 565 U.S. at 547–48, 132 S.Ct. 1235. For Fourth Amendment purposes, therefore, the search was reasonable. *See*, *e.g.*, *United States v. Penn*, 647 F.2d 876, 882 (9th Cir. 1980).

For these reasons, Thomasson is entitled to qualified immunity. *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151.

With regard to Massey, Wilson alleges that she violated his Fourth Amendment rights by "tricking" him into submitting an blood sample for investigatory purposes. As a general matter, "medical professionals do not violate the Constitution where they rely on law enforcement officers' Fourth Amendment determinations." *Bustillos*, 891 F.3d at 220–21. When a medical professional acts pursuant to a search warrant, the Court asks whether the warrant appeared "objectively facially valid" to him. *Rodriques v. Furtado*, 950 F.2d 805, 815 (1st Cir. 1991). Here, Massey was presented with, and acted pursuant to, an "objectively facially valid" search warrant and a reasonable person in her position could conclude that a blood sample fell within its scope. Doc. [20], Ex. 3; [41], Ex. 2, (T. 24–28). For these reasons, Massey did not violate Wilson's Fourth

---

[4] As noted above, Thomasson's execution of the warrant across county lines lacks constitutional significance here. *Green*, 178 F.3d at 1106.

Amendment rights through "trickery," *ibid.*, and is entitled to qualified immunity, *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151.

### ii.        False Arrest Claim

Wilson also alleges that he was falsely arrested because his blood test results were suppressed. Doc. [31], at 6. Wilson's false arrest claim fails on several different grounds. First, his blood test results were suppressed on independent state-law grounds that do not implicate his constitutional rights. *Green*, 178 F.3d at 1106. Second, the aggravated DUI charge was only dismissed without prejudice in connection with his *guilty plea*; it was not dismissed for lack of probable cause. Doc. [32], at 23. Cf. Doc. [41], Ex. 3, (T. 3). Third, Wilson concedes that he was arrested on multiple charges on November 8, 2017, but only challenges that arrest in light of the suppressed blood test results. Doc. [20], Ex. 6; [31], at 6; [32], at 26. However, intoxication is not an element of the three other charges underlying his arrest so suppression of the blood test results did not defeat probable cause to arrest him. *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995). Fourth, and finally, even in the absence of the blood test results, the evidence supporting issuance of the search warrant also supported issuance of an arrest warrant. Doc. [20], Ex. 3, at 3; *United States v. Rias*, 524 F.2d 118, 122 n.6 (5th Cir. 1975). Finally, Wilson's false arrest claim does not raise any Fourteenth Amendment issues because it is premised on the absence of probable cause. *Compare Manuel v. City of Joliet, Ill.*, ─── U.S. ────, 137 S.Ct. 911, 917–19, 197 L.Ed.2d 312 (2017), *with Jauch v. Choctaw Cty.,* 874 F.3d 425, 429 (5th Cir. 2017). The defendants are entitled to qualified immunity. *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151.

### C.  Excessive Bail

Finally, the Court addresses Wilson's excessive bail claim *sua sponte*. 28 U.S.C. § 1915(e)(2)(B)(ii). Assuming *arguendo* that the Excessive Bail Clause applies to the States through

the Fourteenth Amendment, "[b]ail set at a figure higher than an amount reasonably calculated [to ensure the defendant's presence at trial] is 'excessive' under the Eighth Amendment." *Broussard v. Par. of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003). For constitutional purposes, however, one's bail is not "excessive" merely because he cannot afford to pay it. *Id.* (citing *United States v. McConnell*, 842 F.2d 105 (5th Cir. 1988)). Here, Wilson failed to plead that his bail was set in excess of an amount needed *to secure his presence at trial* on his non-DUI charges. *Jones v. Harris Cnty.*, Civ. A. No. H–19–0628, 2019 WL 2355732, at *1 (S.D. Tex. May 31, 2019). Additionally, under Mississippi law, neither police officers nor nurses are responsible for setting bail. Miss. Code Ann. § 21–23–7(1). For these reasons, Wilson's excessive bail claim must fail. 28 U.S.C. § 1915(e)(2)(B)(ii).

## VI.   Conclusion

**IT IS THEREFORE ORDERED AND ADJUDGED** that defendant Police Officer Bobbi Thomasson's [20] motion for summary judgment is **GRANTED**. Furthermore, defendant Jill D. Massey's [24] motion for summary judgment is **GRANTED**. Finally, the Court dismisses Wilson's excessive bail claim *sua sponte*. 28 U.S.C. § 1915(e)(2)(B)(ii).

**SO ORDERED**, this the 30th day of March 2022.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE